40 A.3d 1017

Ricky Shamar WASHINGTON

v.

STATE of Maryland.

No. 45, Sept. Term, 2011.

Court of Appeals of Maryland.

March 23, 2012.

Bradford C. Peabody, Assistant Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

Todd W. Hesel, Honors Attorney (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and ALAN M. WILNER, (Retired, Specially Assigned), JJ.

GREENE, J.

In connection with events occurring on or around October 26, 2007, Petitioner Ricky Shamar Washington was charged with first degree rape and related offenses. He elected a trial by jury to be held in the Circuit Court for Harford County. During voir dire of the jury panel, Petitioner requested that the following question be asked: "Would any of you be more or less likely to believe a witness solely by virtue of the

witness having served in the military or being employed by the military?" The trial judge denied Petitioner's request to pose this question during voir dire. Petitioner later renewed his request, at the conclusion of voir dire, and the trial judge again declined to ask the proposed question. Petitioner was convicted by a jury of first degree rape, third degree burglary, first degree assault, first degree sexual offense, and use of a handgun in the commission of a felony. Petitioner noted an appeal to the Court of Special Appeals, claiming, *inter alia,* that the trial court had abused its discretion in declining to present his proposed question during voir dire of the jury panel. In an unreported opinion, the Court of Special Appeals affirmed the decision of the trial court, concluding that the trial court had not abused its discretion.

Petitioner subsequently filed a petition for writ of certiorari with this Court, which we granted. *Washington v. State,* 420 Md. 463, 23 A.3d 895 (2011). Petitioner presents the following issue [1] for our review:

> Under the circumstances of this case, was it an abuse of discretion and therefore error to refuse to ask whether any prospective juror would be more likely to believe a witness solely by virtue of the witness having served in the military or being employed by the military?

We shall hold that the trial judge did not abuse her discretion in declining to present Petitioner's proposed question during voir dire of the jury panel. This Court has held that only certain questions are mandatory during voir dire of a jury panel, if they are directly related to the facts and circumstances of the case. Based on the circumstances of this case, Petitioner's proposed question was not mandatory, and, thus, it was within the discretion of the trial court whether to pose the question to the jury panel. Because the trial court did not

---

1. Petitioner presented two questions to this Court in his petition for writ of certiorari. We declined to address the first issue:

> Should the trial court have excluded DNA evidence tending to show that sexual acts on that date with another male may have caused the complainant's trauma?

abuse its discretion in denying Petitioner's request to ask the question, we affirm the judgments of the trial court and the intermediate appellate court.

## FACTUAL AND PROCEDURAL BACKGROUND

During voir dire of the jury panel, Petitioner requested that the trial judge ask the following question: "Would any of you be more or less likely to believe a witness solely by virtue of the witness having served in the military or being employed by the military?" The trial court denied Petitioner's request to pose this question, and the court again denied Petitioner's request when it was later renewed at the conclusion of voir dire.[2] In declining to ask Petitioner's proposed question, the trial judge explained:

> I don't see where the alleged victim's employment, even in this community, would play a large role in her credibility in this matter. Otherwise, with respect to the nature of the distinction between police officers and employment of any other nature, we would be asking that question of any other major employment or employer in an area. Given that it just doesn't impinge upon the issues before the Court or a jury today, the finder of fact, it's not really relevant, so the Court's going to decline to ask that question.

At trial, Ms. Smith, the complaining witness, testified that she met Petitioner, a man she knew as Jamal, in the parking lot of her apartment complex "around Thanksgiving time" in 2006. Ms. Smith stated that after she and Petitioner went on one date, she told him she was not interested in seeing him again. She claimed, however, that she later agreed to go on another date with Petitioner on October 26, 2007. According to Ms. Smith, Petitioner was late arriving to pick her up for their date, so she decided to cancel it. Ms. Smith testified that Petitioner called her later that evening, and she agreed to

---

2. The trial court did present the following voir dire question to the jury panel: "Is there any member of the panel who would be more likely or less likely to believe the testimony of a police officer than a civilian witness solely because the witness is a police officer?"

let him come to her apartment to talk. She indicated that when Petitioner arrived at her apartment, he pushed the door open to force his way inside, and he pointed a black handgun in her face. Ms. Smith testified that Petitioner then forced her to undress, and he raped her. Ms. Smith identified Petitioner at trial and in a pre-trial photo array as the person who raped her.

During cross-examination, Ms. Smith testified, "I was in the military, and I finished my service, and I ETS'd .... I completed my service time. I did my four years and just got out. I didn't reenlist. I wasn't discharged like they kicked me out or medically discharged, but I finished." Ms. Smith indicated that in 2003 she had completed her military service. In response to questions regarding her current employment, Ms. Smith stated that she was employed at Aberdeen Proving Ground (APG) as a "Human Resources Staffing Specialist." She maintained that she was working at APG as a civilian. Ms. Smith was questioned on cross-examination regarding the gun she claimed Petitioner brought to her apartment and pointed at her:

Mr. Greenberg: Okay. What kind of gun was that?

Ms. Smith: It was black. It was a handgun. It was not a revolver.

Mr. Greenberg: Was it semiautomatic?

Ms. Smith: I don't know.

Mr. Greenberg: Are you familiar with guns?

Ms. Smith: I am familiar with the A–1, A–2 rifle, but I'm not familiar with handguns.

Mr. Greenberg: So you have never seen a handgun?

Ms. Smith: Television.

Mr. Greenberg: From television. And from television, what did it appear to be?

Ms. Smith: I have no idea.

Mr. Greenberg: Okay. And you are saying nobody on APG carries around guns? Nobody is armed except with rifles?

Ms. Smith: Not at the Central Résumé Processing Center or at the Human Resources Office I work at.

Mr. Greenberg: You never saw anybody carrying any other kind of weapons in person when you were in California in the Army?

Ms. Smith: Not handguns.

Mr. Greenberg: All they had was rifles?

Ms. Smith: Right.

Mr. Greenberg: Even the MPs?

Ms. Smith: I didn't have to deal with MPs.

Ms. Smith testified that following the attack, after Petitioner had left her apartment, she called Carolyn Watkins. Ms. Watkins later testified and recounted the details of the call she had received from Ms. Smith on October 26, 2007. Ms. Watkins stated that she had known Ms. Smith since 2003 and that they met "through work ... [a]t APG. Aberdeen Proving Ground." According to Ms. Watkins, she and Ms. Smith both worked in Human Resources, at the "Central Résumé Processing Center."

At the conclusion of the trial, the jury convicted Petitioner of first degree rape, third degree burglary, first degree assault, first degree sexual offense, and use of a handgun in the commission of a felony. Petitioner noted an appeal to the Court of Special Appeals, contending, *inter alia,* that the trial court had abused its discretion in denying Petitioner's request for the court to pose a question during voir dire of the jury panel regarding bias in favor of, or against, a person serving in or employed by the military. The intermediate appellate court reviewed the trial court's actions under an abuse of discretion standard. The intermediate appellate court quoted from this Court's opinion in *Dingle v. State,* 361 Md. 1, 10, 759 A.2d 819, 824 (2000), noting that "[t]he 'questions [in voir dire] should focus on issues particular to the defendant's case so that biases directly related to the crime, the witnesses, or the defendant may be uncovered.' " Stressing that the goal of voir dire is to empanel a jury that is impartial and unbiased, the Court of Special Appeals referenced our opinion in *Moore v.*

*State*, 412 Md. 635, 649–50, 989 A.2d 1150, 1158 (2010), for the proposition that "it is grounds for disqualification for a juror to presume that one witness is more credible than another simply because of that witness's status or affiliation with the government." After reviewing the record and the trial court's rationale, the intermediate appellate court concluded that "Ms. Smith was not testifying in her capacity as a former member of the army or as a government employee[.]" Thus, according to the intermediate appellate court, Ms. Smith's employment did not play a large role in her credibility as a witness, and "the [C]ircuit [C]ourt did not abuse its discretion in refusing to ask the venire panel if [it] had any bias in favor [of] or against a person with connections to the military."

## DISCUSSION

In *Stewart v. State*, 399 Md. 146, 158–62, 923 A.2d 44, 51–53 (2007), we provided a comprehensive review of the important principles underlying voir dire:

> Voir dire is critical to assure that the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantees to a fair and impartial jury will be honored. *State v. Logan*, 394 Md. 378, 395, 906 A.2d 374, 384 (2006); *Curtin v. State*, 393 Md. 593, 600, 903 A.2d 922, 926 (2006); *White v. State*, 374 Md. 232, 240, 821 A.2d 459, 463 (2003); *Dingle v. State*, 361 Md. 1, 9, 759 A.2d 819, 823 (2000). "Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales–Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 [28] (1981) [ (citation omitted) ].

> In Maryland, the sole purpose of voir dire is to ensure a fair and impartial jury by determining the existence of cause for disqualification, and not as in many other states, to include the intelligent exercise of peremptory challenges. *Logan*, 394 Md. at 396, 906 A.2d at 384; *State v. Thomas*, 369 Md. 202, 207, 798 A.2d 566, 569 (2002); *Evans v. State*,

333 Md. 660, [668] 637 A.2d 117, 125 (1994). As we noted in *Dingle v. State*, 361 Md. 1, 759 A.2d 819:

> Maryland has adopted, and continues to adhere to, limited voir dire. It is also well settled that the trial court has broad discretion in the conduct of voir dire, most especially with regard to the scope and the form of the questions propounded, and that it need not make any particular inquiry of the prospective jurors unless that inquiry is directed toward revealing cause for disqualification.

*Id.* at 13–14, 759 A.2d at 826 (internal citations omitted).

We have identified two broad areas of inquiry that may reveal cause for a juror's disqualification: (1) examination to determine whether the prospective juror meets the minimum statutory qualifications for jury service, and (2) examination to discover the juror's state of mind as to the matter in hand or any collateral matter reasonably liable to have undue influence over him. *Davis v. State*, 333 Md. 27, 35–36, 633 A.2d 867, 871 (1993). The scope of voir dire and the form of questions propounded rest firmly within the discretion of the trial judge. *Curtin*, 393 Md. at 603, 903 A.2d at 928; *Boyd v. State*, 341 Md. 431, 436, 671 A.2d 33, 35 (1996). It is the responsibility of the trial judge to conduct an adequate voir dire to eliminate from the venire panel prospective jurors who will be unable to perform their duty fairly and impartially and to uncover bias and prejudice. *Logan*, 394 Md. at 396, 906 A.2d at 385; *White*, 374 Md. at 240, 821 A.2d at 463. To that end, the trial judge should focus questions upon "issues particular to the defendant's case so that biases directly related to the crime, the witnesses, or the defendant may be uncovered." *Thomas*, 369 Md. at 207–08, 798 A.2d at 569. In reviewing the court's exercise of discretion during the voir dire, the standard is whether the questions posed and the procedures employed have created a reasonable assurance that prejudice would be discovered if present. *White*, 374 Md. at 242, 821 A.2d at 464. On review of the voir dire, an appellate court looks at the record as a whole to determine whether the matter has

been fairly covered. *Logan,* 394 Md. at 396, 906 A.2d at 385; *White,* 374 Md. at 243, 821 A.2d at 465.

We review the trial judge's rulings on the record of the voir dire process as a whole for an abuse of discretion, that is, questioning that is not reasonably sufficient to test the jury for bias, partiality, or prejudice. *White,* 374 Md. at 243, 821 A.2d at 465. It appears to be the universal rule that on appellate review, the exercise of discretion by trial judges with respect to the particular questions to ask and areas to cover in voir dire is entitled to considerable deference. The trial judge has had the opportunity to hear and observe the prospective jurors, to assess their demeanor, and to make factual findings. The judge's conclusions are therefore entitled to substantial deference, unless they are the product of a voir dire that "is cursory, rushed, and unduly limited." *Id.* at 241, 821 A.2d at 464. *See also Mu'Min v. Virginia,* 500 U.S. 415, 428, 111 S.Ct. 1899, 1907, 114 L.Ed.2d 493 [508] (1991) (noting that the findings of the trial judge on the issue of juror impartiality should be upheld absent manifest error); *Rosales–Lopez,* 451 U.S. at 189, 101 S.Ct. at 1634 [68 L.Ed.2d at 29] (noting that "[b]ecause the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the *voir dire* ").

The manner of conducting voir dire and the scope of inquiry in determining the eligibility of jurors is left to the sound discretion of the judge. *Curtin,* 393 Md. at 603, 903 A.2d at 928; *Whittemore v. State,* 151 Md. 309, 315, 134 A. 322, 324 (1926); *cf.* Maryland Rule 4–312(d) (providing that the "court may permit the parties to conduct an examination of prospective jurors or may itself conduct the examination"). Other than by Rule 4–312 and Maryland common law, the manner of conducting voir dire is not governed by any statute or specific rule. *Poole v. State,* 295 Md. 167, 187, 453 A.2d 1218, 1229 (1983). As to the scope of inquiry and the decision as to whether to permit a particular

question, the trial judge is not required, with some limited exceptions, to ask specific questions requested by trial counsel. Questions which are not directed at a specific ground for disqualification, which are merely "fishing" for information to assist in the exercise of peremptory challenges, which probe the prospective juror's knowledge of the law, ask a juror to make a specific commitment, or address sentencing considerations are not proper in voir dire. *See Curtin*, 393 Md. at 602, 903 A.2d at 928; *Grogg v. State*, 231 Md. 530, 532, 191 A.2d 435, 436 (1963). *See also Standefer v. State*, 59 S.W.3d 177, 180 (Tex.Crim.App.2001) (defining a "commitment" question as one where "one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question"). (Footnote omitted).

In *Curtin*, 393 Md. at 609–10 n. 8, 903 A.2d at 932 n. 8, we discussed certain areas where, if directly related to the case before the court, inquiry is mandated during voir dire of a jury panel:

These areas are: race, ethnicity, or cultural heritage, *Hernandez v. State*, 357 Md. 204, 232, 742 A.2d 952, 967 (1999) ("Where a voir dire question has been properly requested and directed to bias against the accused's race, ethnicity, or cultural heritage, the trial court ordinarily will be required to propound such a question.")[;] religious bias, [*Casey v. Roman Catholic Archbishop of Balt.*, 217 Md. 595, 607, 143 A.2d 627, 632 (1958) ] ("[I]f the religious affiliation of a juror might reasonably prevent him from arriving at a fair and impartial verdict in a particular case because of the nature of the case, the parties are entitled to . . . have the court discover [ . . . ] them."); in capital cases, the ability of a juror to convict based upon circumstantial evidence, [*Corens v. State*, 185 Md. 561, 564, 45 A.2d 340, 344 (1946) ] ("We . . . hold that the State has the right to challenge a juror in a capital case on the ground that he would not be willing to convict on circumstantial evidence.")[;] and placement of undue weight on police officer credibility, *Langley v. State*,

281 Md. 337, 349, 378 A.2d 1338, 1344 (1977) ("[W]e hold that in a case such as this, where a principal part of the State's evidence is testimony of a police officer diametrically opposed to that of a defendant, it is prejudicial error to fail to propound a question such as . . . whether any juror would tend to give more or less credence . . . [to a police officer].")ᐧ; violations of narcotics law, [*State v. Thomas,* 369 Md. 202, 214, 798 A.2d 566, 573 (2002) ] (holding that [the] trial judge abused his discretion in failing to ask [the] question whether any jurors harbored strong feelings towards the violation of narcotics laws where [the] defendant was charged with the possession and distribution of a controlled dangerous substance)ᐧ; strong emotional feelings with regards to alleged sexual assault against a minor, [*Sweet v. State,* 371 Md. 1, 9–10, 806 A.2d 265, 271 (2002) ] (holding that [the] trial court abused its discretion in refusing to ask whether the charges of second degree assault and third degree sexual offense against a minor stirred up such strong emotional feelings that it would affect the veniremen's impartiality)ᐧ; *cf. Landon v. Zorn,* 389 Md. 206, 222, 884 A.2d 142, 151 (2005) (holding that [the] trial judge did not abuse his discretion in refusing to ask [a] proposed voir dire question regarding bias against plaintiffs in personal injury and medical malpractice cases because an affirmative answer to the proposed question would not constitute grounds for disqualification for cause).

In *Moore v. State,* 412 Md. 635, 661, 989 A.2d 1150, 1164 (2010), we made clear that this list does not necessarily encompass the entire scope of mandatory questions to be posed by a trial judge during voir dire, if such questions are directly related to the case before the court (asserting that "[w]e reject the premise that . . . any *voir dire* question not expressly mentioned in . . . *Curtin* is not mandatory").

In *Langley v. State,* 281 Md. 337, 338, 378 A.2d 1338, 1338 (1977), we addressed whether a trial judge had abused his discretion in failing to ask the following question on voir dire: "Is there anyone here who would give more credit to the testimony of a police officer over that of a civilian, merely

because of his status as a police officer?" During Langley's trial, a police officer testified regarding his observations of the crime scene and Langley's actions. *Langley*, 281 Md. at 338–39, 378 A.2d at 1339. Langley testified in his own defense, offering a version of the events contrary to the officer's testimony, and the jury convicted Langley of robbery. *Langley*, 281 Md. at 338–39, 378 A.2d at 1338–39. On review before this Court, we noted that while a trial judge has broad discretion in conducting voir dire of a jury panel, "parties to an action triable before a jury have a *right* to have questions propounded to prospective jurors on their *voir dire*, which are directed to a specific cause for disqualification, and failure to allow such questions is an abuse of discretion constituting reversible error." *Langley*, 281 Md. at 341–42, 378 A.2d at 1340 (quoting *Casey v. Roman Catholic Archbishop of Balt.*, 217 Md. 595, 605, 143 A.2d 627, 631 (1958)). Accordingly, we held that "[a] juror who states on voir dire that he would give more credit to the testimony of police officers than to other persons has prejudged an issue of credibility in the case." *Langley*, 281 Md. at 348, 378 A.2d at 1343. Under the particular circumstances of *Langley*, "where a principal part of the State's evidence [was] testimony of a police officer diametrically opposed to that of a defendant, it [was] prejudicial error to fail to propound [Langley's] question[.]" *Langley*, 281 Md. at 349, 378 A.2d at 1344. Thus, we held that the trial judge abused his discretion in declining to present Langley's proposed voir dire question to the jury.

*Bowie v. State*, 324 Md. 1, 595 A.2d 448 (1991), involved essentially the same question that we addressed in *Langley*. In *Bowie*, "the State's witness list indicated that it would, and the record reflect[ed] that it did, call ... police officers to testify in their official capacity." *Bowie*, 324 Md. at 7, 595 A.2d at 451. Prior to the start of trial, the court refused to ask several proposed questions during voir dire, two of which are relevant to this discussion: "1. Many of the State's witnesses will be police officers. Do you believe that a police officer will tell the truth merely because he or she is a police officer? 2. Would any of you be more or less likely to believe a

police officer than a civilian witness, solely because he or she is a police officer?" *Bowie*, 324 Md. at 6, 595 A.2d at 450. We determined that although Bowie did not testify at trial, and thus there was no testimony by a defendant that was "diametrically opposed" to the testimony given by the officers, the holding in *Langley* was nonetheless dispositive of the issues that were before us. *Bowie*, 324 Md. at 7–8, 595 A.2d at 450–51. We concluded in *Bowie* that credibility of witnesses is not an issue only when different versions of the events in question are specifically presented by opposing parties. *Bowie*, 324 Md. at 10, 595 A.2d at 452. Rather, "whether, or not, a defendant elects to take the stand or to present evidence at all, it is still necessary to determine whether witnesses called by the State will start with a 'presumption of credibility' simply because of the positions occupied rather than the facts of the case." *Id.* The questions proposed by Bowie were directed toward uncovering bias in "[potential jurors] who would simply believe police officers by virtue of the position without regard to testimony from anyone else and [potential jurors] who would believe the police officers in comparison to civilian witnesses." *Bowie*, 324 Md. at 7–8, 595 A.2d at 451. Therefore, we held that the trial judge abused his discretion in declining to pose the voir dire questions raised by Bowie. *Bowie*, 324 Md. at 11, 595 A.2d at 453.

In *Moore*, we addressed a trial judge's refusal to ask certain questions during voir dire,[3] and we clarified our holdings in *Langley* and *Bowie*. During voir dire of the jury panel, Moore requested that the following questions be propounded: "Would any prospective juror be more likely to believe a witness for the prosecution merely because he or she is a prosecution witness?" and "Would any prospective juror tend to view the testimony of a witness called by the defense with more skepticism than witnesses called by the State, merely because they were called by the defense?" *Moore*, 412 Md. at

---

3. The trial judge did present the following question to the jury panel upon Moore's request: "Would any prospective juror be more or less likely to believe a police officer than a civilian witness, solely because he or she is a police officer?" *Moore*, 412 Md. at 642, 989 A.2d at 1153.

642, 989 A.2d at 1153. The trial judge declined to ask these questions to the jury panel. *Moore,* 412 Md. at 642, 989 A.2d at 1153–54. Several witnesses testified for the State, including at least one police officer, offering varying accounts of the alleged events involving Moore. *Moore,* 412 Md. at 642–43, 989 A.2d at 1154. The jury convicted Moore of two counts of attempted first degree murder and related offenses. *Moore,* 412 Md. at 643, 989 A.2d at 1154.

On review in *Moore,* we analyzed several cases addressing proposed voir dire questions. As our case law indicates, while voir dire is left largely to the discretion of the trial court, the court "must adapt the questions to the particular circumstance or facts of the case, the ultimate goal, of course, being to obtain jurors who will be 'impartial and unbiased.' " *Moore,* 412 Md. at 644–45, 989 A.2d at 1155 (citing *Dingle v. State,* 361 Md. 1, 9, 759 A.2d 819, 824 (2000)). We offered guidance for interpreting our holding in *Langley,* asserting that "[a]t its core, the *Langley* Court's holding is that it is grounds for disqualification for a juror to presume that one witness is more credible than another simply because of that witness's status or affiliation with the government." *Moore,* 412 Md. at 649–50, 989 A.2d at 1158. Importantly, we stressed that, although in *Langley* we addressed police officer credibility, "the underlying issue of prejudgment encompassed more than police officers, [as] many more occupations and categories potentially were implicated." *Moore,* 412 Md. at 649, 989 A.2d at 1158. We maintained that *Bowie* "articulated expressly that the issue suggested by the police witness question is broader than those witnesses and, therefore, has a relevance beyond cases involving police officers." *Moore,* 412 Md. at 650–51, 989 A.2d at 1158. Ultimately, we held that "[a]t the heart of the issues presented in *Langley, Bowie* and [*Moore* ] is whether it is appropriate for a juror to give credence to a witness simply because of that witness's occupation, or status, or category, or affiliation." *Moore,* 412 Md. at 652, 989 A.2d at 1159 (internal quotations omitted). Thus, we concluded that under the circumstances presented in *Moore,* the trial court abused its discretion in declining to ask the voir

dire questions proposed by the defense. *Moore,* 412 Md. at 668, 989 A.2d at 1168–69.

Of particular importance to the instant case, in *Moore,* we explained the proper application of the witness occupation voir dire question. We stated that, as with all voir dire, the question must relate to uncovering a bias that could arise, given the particular facts of the case. *Moore,* 412 Md. at 654, 989 A.2d at 1161. Accordingly, for a voir dire question to be appropriate, "there must be a qualifying witness, one, who, because of occupation or category, may be favored, or disfavored, simply on the basis of that status or affiliation." *Moore,* 412 Md. at 655, 989 A.2d at 1161. Therefore, in a situation where "no police *or other official witnesses* will be called by the State, the occupational, or status, question need not be asked." *Id.* (emphasis added). We explained that voir dire questions addressing a witness's category or affiliation with the State or defense serve a different function than questions addressing a witness's occupation. Thus, we expressly rejected the argument that the Defense–Witness and State–Witness questions are subsumed within the witness occupation question. *Moore,* 412 Md. at 666, 989 A.2d at 1167. While the witness occupation question seeks to uncover biases with regard to "police or other official witnesses," *Moore,* 412 Md. at 655, 989 A.2d at 1161, the category or affiliation question seeks to uncover biases with regard to "official or non-official" witnesses called by the State or the defense. *Moore,* 412 Md. at 653, 989 A.2d at 1160. Ultimately, the overarching principle to be applied to any type of voir dire question is that "[i]f a response to a requested *voir dire* question would not further the goal of *voir dire* and uncover bias among prospective members of the jury, it need not be asked and the court will not abuse its discretion in not doing so." *Moore,* 412 Md. at 662, 989 A.2d at 1165.

■ Petitioner contends that the trial court abused its discretion by refusing to present Petitioner's proposed voir dire question regarding potential bias in favor of, or against, a person who has served in or been employed by the military.

Maintaining that potential jurors would likely use Ms. Smith's occupation as an important factor in judging her credibility as a witness, Petitioner notes that "the complaining witness was recently in the U.S. Army for four years, until 2003, and then began working as a civilian for the U.S. Army, in the adjacent community." In addition, Petitioner claims that Ms. Watkins, also an employee at Aberdeen Proving Ground, was a central witness for the State, as "she claimed to have received from the complainant the first report of 'rape.' " Petitioner stresses that the military in general, and Aberdeen Proving Ground specifically, is not a typical major employer and that "[t]he overall influence of the military in Harford County far exceeds that of a routine place of employment." Because the military is an institution that has historically evoked strong feelings, according to Petitioner, its strong presence in the area where the trial was held supports "the notion that prospective jurors could be biased in favor of a rape complainant or other witness who is an Army veteran or an Army employee," especially in a time of war. Petitioner also claims that circumstances sur-rounding the case, such as the "scandal at the APG [that] surfaced in November 1996, wherein the U.S. Army brought charges against twelve commissioned and non-commissioned male officers for sexual assaults on female trainees under their command," warranted posing the requested voir dire question. Petitioner quotes extensively from our opinion in *Moore* in support of his assertion that the occupation and governmental affiliation of both Ms. Smith and Ms. Watkins required the trial judge to ask the proposed voir dire question because of its potential to uncover bias that may have been present, given the facts of the case.

Contrary to Petitioner's claims, the State maintains that the trial court did not abuse its discretion in declining to ask Petitioner's proposed voir dire question to the jury panel, as "[n]either Ms. Smith, nor any other witness, testified in an official capacity as a former (or active) member of the U.S. military, or as a civilian employed by the military, and Ms. Smith's employment was not otherwise relevant to the issues before the jury." The State relies on this Court's holding in

*Curtin v. State,* 393 Md. 593, 903 A.2d 922 (2006), that "[t]he rule [for voir dire] is ... that questions not directed to a specific reason for disqualification and exclusion by the court may be refused in the court's discretion." *Curtin,* 393 Md. at 603, 903 A.2d at 928 (quoting *Whittemore v. State,* 151 Md. 309, 315, 134 A. 322, 324 (1926)). The State claims that, in accordance with *Moore,* 412 Md. at 653–55, 989 A.2d at 1160–61, mandatory questions for the trial court to propound during voir dire include "questions designed to uncover bias based on a witness's official 'status' or 'occupation,' *i.e.,* whether a juror would give more or less credit to the testimony of a witness merely because the witness was a police officer or other 'official witness.'" The State contends that *Moore, Langley,* and *Bowie* stand for the principle that Petitioner's proposed question would have been mandatory "only if the State called a witness to testify in an official capacity as a former member of the military, or civilian employed by the military." Thus, because "Ms. Smith did not testify in any 'official' or 'semi-official' capacity, and her past or current employment was not related to the crimes," Petitioner's proposed question was not mandatory, and the trial judge did not abuse her discretion in declining to ask it during voir dire.

We agree with the State's position, and we hold that the trial judge did not abuse her discretion in declining to pose Petitioner's witness occupation voir dire question. Ms. Smith and Ms. Watkins were not testifying at the trial against Petitioner in an official military capacity and their civilian occupations were not otherwise relevant to the crimes for which Petitioner was charged. Thus, in accordance with our prior case law, the witness occupation question was not mandatory on voir dire of the jury panel.

While this Court has typically addressed the witness occupation question in the context of police officers, in *Moore* we expressed that "the issue suggested by the police witness question is broader than those witnesses and, therefore, has a relevance beyond cases involving police officers." *Moore,* 412 Md. at 651, 989 A.2d at 1158. Thus, we left open the possibility that other occupations could warrant a voir dire

question designed to uncover biases held by potential jurors based on a witness's occupation. When addressing the witness occupation question, however, this Court has consistently discussed it in the context of police officers or other *official witnesses*. In *Langley*, we stated that it was an abuse of discretion for the trial court not to pose the requested voir dire question, due to the potential that a member of the venire may give more credence to police officer testimony *"because of the official status* of the witness." *Langley*, 281 Md. at 348, 378 A.2d at 1343 (emphasis added). We cited several cases from other jurisdictions that employed a similar rationale. *See United States v. Brewer*, 427 F.2d 409, 410 (10th Cir.1970) (stating that "it is a proper subject of voir dire to ask whether jurors would give greater or less weight to anticipated testimony of a law enforcement officer than to that of another witness *simply because of the officer's official character"* (emphasis added)); *Brown v. United States*, 338 F.2d 543, 545 (D.C.Cir.1964) (concluding that "when important testimony is anticipated from certain categories of witnesses, *whose official or semi-official status* is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination is not only appropriate but should be given if requested" (emphasis added)); *Commonwealth v. Futch*, 469 Pa. 422, 366 A.2d 246, 249 (1976) (asserting that "[th]e crux of the case at bar is the credibility of the prison guards' testimony contrasted to the credibility of the prison inmates' testimony. On these facts a juror who would believe the testimony of a prison guard *simply because of his official status* would be subject to disqualification for cause" (emphasis added)). Our holding in *Bowie* reaffirmed the principles expressed in *Langley*. *Bowie*, 324 Md. at 8, 595 A.2d at 451.

In *Moore*, we explained and clarified the principles set out in *Langley* and *Bowie*. Notably, we observed, "In *Bowie*, we recognized, as *Langley* had done, albeit more generally, that favoring a witness on the basis of that witness's category or affiliation poses the same threat to the defendant's right to a fair and impartial trial as favoring a witness on the basis of

occupation or status; in other words, we were clear, there is not just one way that prejudgment could manifest." *Moore,* 412 Md. at 653, 989 A.2d at 1160 (citing *Bowie,* 324 Md. at 8–9, 595 A.2d at 451–52). We differentiated between the two types of questions at issue by noting that the witness occupation question applied only to "police or other official witnesses." *Moore,* 412 Md. at 655, 989 A.2d at 1161 (noting that "where . . . no police or other official witnesses will be called by the State, the occupational, or status, question need not be asked"). Thus, we held that the witness occupation question is mandatory during voir dire of the jury panel only in the situation where police officers or other official witnesses are expected to testify during trial.

██ During Petitioner's trial, Ms. Smith testified as the alleged victim of a rape perpetrated by Petitioner, and Ms. Watkins testified as a corroborating witness who had received a phone call from Ms. Smith near the time of the incident. Neither Ms. Smith nor Ms. Watkins testified in an official capacity.[4] Moreover, both women were employed by the military as civilians at the time of the incident—a fact that had no bearing on witness credibility or any other substantive issue before the jury. Therefore, Petitioner's proposed voir dire question was not mandatory; it was within the sound discretion of the trial judge to determine whether to present the witness occupation question to the jury panel.

---

4. The State claims in its Brief that it "did not elicit evidence of Ms. Smith's military service or current employment. Rather, it was [Petitioner] who elicited that evidence on cross-examination, which he then used to attack Ms. Smith's credibility." We stress that the focus of the witness occupation voir dire question is on whether any witness, called by the State or the defense, is expected to testify in an official capacity, such that a potential juror may give more or less credence to the testimony simply because of the witness's official status. It is not material to our analysis whether details of a witness's official position are brought out on direct examination or on cross-examination. Thus, we disagree with the State's emphasis on the fact that information regarding Ms. Smith's military background was only made known to the jury through Petitioner's cross-examination during trial. As we stated, this fact does not control the issue of whether the witness occupation voir dire question is appropriate.

■■ We expressed in *Dingle v. State* that "the trial court has broad discretion in the conduct of voir dire, most especially with regard to the scope and the form of the questions propounded, and . . . it need not make any particular inquiry of the prospective jurors unless that inquiry is directed toward revealing cause for disqualification." *Dingle*, 361 Md. at 13–14, 759 A.2d at 826 (citations omitted). Thus, we give substantial deference to a trial judge's conduct during voir dire. *See Stewart v. State*, 399 Md. 146, 160, 923 A.2d 44, 52 (2007). A question that is properly aimed at uncovering biases must directly relate to the crime, the witnesses, or the defendant. *State v. Shim*, 418 Md. 37, 52, 12 A.3d 671, 679 (2011). If the proposed question does not further the goal of uncovering bias among prospective jurors, the trial court will not abuse its discretion in refusing to pose the question. *See Moore*, 412 Md. at 662, 989 A.2d at 1165. Here, the proposed question, regarding service in or employment by the military, did not directly relate to the crime charged, any of the witnesses who testified, or the defendant. Contrary to Petitioner's stated position, it was within the discretion of the trial judge to conclude that Ms. Smith's employment would not impinge on her credibility and was not otherwise related to the facts before the jury. Thus, the trial judge did not abuse her discretion in determining that Petitioner's proposed voir dire question was not relevant to the facts of the case and was not likely to uncover bias that would constitute cause for disqualification. Therefore, we affirm the judgment of the intermediate appellate court in holding that there was no abuse of discretion committed by the trial court in declining to ask Petitioner's proposed voir dire question.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**