REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2684

September Term, 2012

LANCE WILLIAM HAYES

v.

STATE OF MARYLAND

Eyler, Deborah S.,
Meredith,
Graeff,

JJ.

Opinion by Eyler, Deborah S., J.

Filed: May 1, 2014

After a three-day trial, a jury in the Circuit Court for Prince George's County convicted Lance William Hayes, the appellant, of attempted first-degree murder, attempted second-degree murder, first-degree assault, second-degree assault, use of a handgun in the commission of a crime of violence, and wearing and carrying a handgun. Hayes was sentenced to a total of 53 years active incarceration.

On appeal, Hayes poses three questions for review, which we have rephrased slightly:[1]

I.      Did the trial court commit reversible error by refusing to ask his requested *voir dire* question about racial bias?

II.     Did the trial court err in admitting a hearsay statement made by the victim as a prior consistent statement?

III.    Did the prosecutor's comments during the State's closing argument constitute plain error?

We answer Question I in the affirmative, and on that ground shall reverse the judgments of the circuit court and remand the case for further proceedings. Given our disposition, we need not address the remaining questions.

---

[1]Hayes words his questions as follows:

1. Did the trial court err in refusing to propound Appellant's requested voir dire question as to racial bias?

2. Did the trial court err in admitting the hearsay statement of Herman Grace that Appellant made a gun gesture at him as a prior consistent statement?

3. Did the trial court permit plain error in permitting the State to make repeated references to God during opening statement and closing argument that appealed to the passions and prejudices of the jury?

**FACTS AND PROCEEDINGS**

On the evening of October 28, 2011, Herman Grace was shot outside his home as he was returning from church with his wife, Debra Grace. He survived, and at trial identified Hayes as the shooter. Hayes has a child with the Graces' daughter, Kevia Spencer. The State theorized that Hayes shot Herman Grace because he blamed him for an unfavorable custody determination that had been finalized a few days before the shooting.

We shall include additional facts as relevant to our discussion.

**DISCUSSION**

**I.**

Before trial, defense counsel submitted written "Proposed Defense Voir Dire" questions to the court. One question was: "Mr. Hayes is an African American. Would that fact in any way impact your ability to be fair and impartial?" ("Question 8.")

The venire panel consisted of 72 people. During *voir dire*, the court acknowledged that defense counsel wanted Question 8 to be posed, but asked the prosecutor's view about the court's doing so. The prosecutor objected to Question 8 "because all of the witnesses are African-American. The defendant is African-American." The court declined to pose Question 8 to the venire. Defense counsel noted an objection. At the conclusion of *voir dire*, defense counsel stated, "I'm dissatisfied because you haven't asked my number 8, and I'll continue just to except to that but that's okay."

2

After the jury was selected, both counsel told the court they were satisfied and the court broke for lunch. Upon return, and before opening statements, defense counsel said he "just wanted to put one more thing on the record." He stated:

> When we seated our jury and when we seated our alternates, I indicated that I was satisfied. I was satisfied to the extent that those 12 people can hear the case and those two alternates can hear the case. I don't want the record to be mistaken as that being acquiescing. I still object to the empanelment of this jury based on the Court's failure to instruct on my question number 8.

The prosecutor reiterated that the court was not required to propound Question 8 because a majority of the venire panel, as well as the victim and all of the State's civilian witnesses, were African-American. The judge told defense counsel, "You've made your statement for the record, the Court's already ruled and we'll leave it at that." Counsel gave opening statements and the State then called Kevia Spencer and Debra Grace as witnesses. It moved into evidence numerous photographs, including photographs of Herman Grace after he was shot, and a CD of a 911 call reporting the shooting.

On the morning of the second day of trial, the State called Alfred Hopkins, a neighbor of the Graces who witnessed the shooting, and Herman Grace, the victim. The court then recessed for lunch. When the prosecutor returned from lunch, she informed the court and defense counsel that she had done some research and, based upon *Hernandez v. State*, 357 Md. 204 (1999), she now was of the view that the court's refusal to pose the defense's requested Question 8 to the panel during *voir dire* was "potential grounds for reversible error." She asked defense counsel to waive his objection to the court's failure to propound

3

Question 8 on *voir dire* and proposed that the court cure any error[2] by posing Question 8 to the seated jurors. Defense counsel responded,

> I object and I object. I did request [Question 8] during the voir dire process, when we had the entire panel. The jury has been selected, the panel, two alternates. What's done is done in that respect, and I don't think that attempting to cure it by asking this jury, after a day and a half of testimony, is appropriate, nor constitutional, nor something that should be done, and I violently oppose it.

The judge read the *Hernandez* opinion and remarked that it "clearly states that if there is a race question presented by the defense, the Court shall ask it." He said he was willing to pose Question 8 to the seated jurors if defense counsel would agree, and suggested that he could do so by calling each juror to the bench individually.

Defense counsel objected once again. He argued that "reverting to voir dire" after a day and a half of trial would be inappropriate. He emphasized that Question 8 concerned a sensitive issue, and 14 already seated jurors would be less likely to admit to racial bias than would potential jurors in a pool of 72 who were being asked the question in the context of other *voir dire* questions. He asserted that the seated jurors likely were "invested" in the case by that time, and posing Question 8 to them individually would not "elicit the same free response that you otherwise would have in the process." Defense counsel maintained, "Mr. Hayes [was] not afforded the opportunity to see his voir dire pool of 72 answer [Question 8]"

---

[2]Although the prosecutor told the court that the failure to ask Question 8 probably was error, she argued that the general bias question the court asked at the end of *voir dire* was sufficient to cover the racial bias question. *Hernandez* holds to the contrary. 357 Md. at 226.

and thus "was unable to pick a jury of 12 persons based on [that] input." When asked what should be done, defense counsel said they should "push forward and see where the chips fall in the future." The trial court ruled that, based on defense counsel's objection, it would not pose Question 8 to the seated jurors.

The trial of the case continued. On the third (and last) day, the State rested. Defense counsel moved for judgment of acquittal on several grounds, mentioning again that the court had failed to propound Question 8 on *voir dire*. The court denied the motion. The defense rested and renewed its motion for judgment of acquittal, which again was denied. After instructions and closing arguments the jury deliberated and, as noted, convicted Hayes of numerous crimes, for which he later was sentenced by the court.

In *Hernandez*, the defendant, who was Hispanic, asked the trial court to pose the following question on *voir dire*: "Is there any member of the panel who would be prejudiced against a defendant because of any defendant's race, color, religion, sexual orientation, appearance, or sex?" 357 Md. at 206-07. The court refused, reasoning that these specific biases were covered by the court's general *voir dire* question about bias or prejudice against the defendant. The defendant was convicted of child abuse and rape. Ultimately, the case was heard by the Court of Appeals, which reversed the convictions. It held: "Where a *voir dire* question has been properly requested and directed to bias against the accused's race, ethnicity, or cultural heritage, the trial court ordinarily will be required to propound such a question, regardless of the existence of special circumstances." *Id.* at 232.

5

Predictably, Hayes contends on appeal that the trial court committed reversible error by refusing to propound Question 8 during *voir dire*.[3] The State concedes "that the trial court erred under *Hernandez* by failing to give the voir dire question requested in this case."[4] It argues, however, that by opposing the State's proposed cure for the error, *i.e.*, having the trial court pose Question 8 to the seated jurors on day two of the trial, Hayes "waived any right to appellate relief." The State likens Hayes's opposition to the proposed cure to "inviting" or "inducing" error. It reasons that by objecting to the cure, Hayes caused the error to continue, and therefore should not be seen to benefit from the error on appeal. The State expresses indignation that from the moment the trial court erred, so long as Hayes refused to agree to the proposed curative measure, he would prevail: either he would be acquitted or he would be convicted but with a firm basis for obtaining a reversal of his convictions on appeal and a new trial. The State characterizes this as "gamesmanship."

---

[3]Hayes argues defensively that this issue is preserved for review on appeal even though he accepted the jury as selected. The State does not challenge preservation, however, as it recognizes that Hayes could accept the jury as selected without waiving his prior objection to the court's failure to ask Question 8 during *voir dire*. *See Marquardt v. State*, 164 Md. App. 95, 143 (2005) ("[A]ccepting the jury that is ultimately selected after the circuit court has refused to propound requested voir dire questions does not constitute acquiescence to the previous adverse ruling."). *See also Stringfellow v. State*, 425 Md. 461, 471 (2012) (citing the above language from *Marquardt*).

[4]Despite its concession, in a footnote in its brief the State suggests that in *Washington v. State*, 425 Md. 306 (2012), and *Stewart v. State*, 399 Md. 146 (2007), the Court of Appeals may have "qualified" the holding in *Hernandez*, and therefore we need not find error. We do not read either case as doing so. *See* n.7, *infra*.

The State further argues that Hayes had no legitimate reason or tactic to oppose the proposed cure and, relatedly, that the proposed cure would have been effective, as "there was no substantive difference between conducting the voir dire in the belated manner suggested by the State and how the voir dire would have been conducted had the trial court recognized its duty under *Hernandez*." According to the State, there is no reason why "a person would be more willing to answer a sensitive question in front of a large group of strangers than in the more intimate setting of a bench conference[.]" Moreover, because the seated jurors were under oath, they would have been obligated to truthfully answer the court's belatedly posed racial bias question. *See* n.5, *infra*. In the State's view, "[a]ny claim that defense counsel's opposition [to the proposed cure] rested on anything other than an attempt to thwart the trial court from remedying the potential for prejudice must be rejected."

We disagree with the State's arguments for several reasons, and primarily because they presuppose, incorrectly, that the trial court's error in failing to propound Question 8 during *voir dire* could be cured by its posing Question 8 to the seated jurors in the middle of the trial.

Whether Hayes waived his right to challenge the trial court's error in refusing to propound Question 8 on *voir dire* must be answered in light of the objective of the *voir dire* process. In a criminal case, the purpose of *voir dire* is to effectuate the defendant's constitutional right to a fair and impartial jury, as secured by the Sixth Amendment to the federal constitution and Article 21 of the Maryland Declaration of Rights. *Voir dire* -- the

7

questioning under oath of all potential jurors as part of the process of jury selection -- is the mechanism for trial judges to "determin[e] the existence of cause for disqualification." *Washington v. State*, 425 Md. at 312.[5]

"There are two categories of specific cause for disqualification: (1) a statute disqualifies a prospective juror; or (2) a 'collateral matter [is] reasonably liable to have undue influence over' a prospective juror." *Pearson v. State*, ___Md. ___, ____, Slip op. No. 49, 2013 Term (filed February 21, 2014), at 4 (quoting *Washington v. State*, 425 Md. at 313).[6] "The latter category is comprised of 'biases directly related to the crime, the witnesses, or the defendant.'" *Id.* (quoting *Washington*, 425 Md. at 313). "It is the responsibility of the trial judge to conduct an adequate voir dire to eliminate from the venire panel prospective jurors who will be unable to perform their duty fairly and impartially, and to uncover bias and prejudice." *Washington*, 425 Md. at 313. "'Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled.'" *Id*. at 312 (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (citation omitted in *Washington*).

---

[5]The State repeats its argument, made below, that the answers the already seated jurors would have given to Question 8 would have been more likely to be truthful than the answers given by the venire panel members, as the seated jurors were under oath. The State overlooks that the members of the venire panel took an oath to answer the questions posed to them truthfully. *See* Md. Rule 4-312(e) ("The jurors' responses to any examination [on *voir dire*] shall be under oath.").

[6]Md. Code (2006 Repl. Vol.), section 8-103 of the Courts & Judicial Proceedings Article sets forth the qualification criteria for jury service.

As *Hernandez* makes clear, a prospective juror with bias against a criminal defendant's race, ethnicity, or cultural heritage is not qualified to sit on that defendant's jury and therefore a requested *voir dire* question designed to uncover such bias in a prospective juror is mandatory. *Washington*, 425 Md. at 315 (quoting the discussion in *Curtin v. State*, 393 Md. 593, 609-10 n.8 (2006), of subjects about which *voir dire* inquiry is mandated "if directly related to the case"[7]).

In the case at bar, what Hayes lost on account of the trial court's error in refusing to pose Question 8 was the opportunity to learn, at the time material to the jury selection process, whether any prospective juror's ability to be fair and impartial would be affected by the fact that he is African-American. This is a critical loss, because it affects the "ultimate goal" of *voir dire*, which is "to obtain jurors who will be 'impartial and unbiased.'" *Moore*

---

[7]It is the "directly related to the case" language used in *Curtin* and quoted in *Washington* to which the State points to suggest that the Court of Appeals has moved away from the holding in *Hernandez* that a racial, ethnic, or cultural bias *voir dire* question, if requested by the defendant, must be posed on *voir dire*. *See also Stewart v. State*, 399 Md. at 161 n.5 (referring to mandatory areas of inquiry when the area is "reasonably related to the case before the court"). As noted, *supra*, at n.4, we disagree. The *Hernandez* opinion itself qualified the mandatory nature of the question by saying it "ordinarily" must be posed. We take that and the "directly related to the case" and "reasonably related to the case" language to mean that the question must be posed if it is relevant. For instance, a question whether a prospective juror has a bias against Hispanics in a case in which the defendant is not Hispanic, is not related to or associated with anyone Hispanic, in which there are no Hispanic witnesses, and in which Hispanic heritage has no role probably would not be relevant to uncovering bias, certainly against the defendant, and therefore would not be required to be asked. Here, Question 8 stated that Hayes is African-American and asked whether there was anyone on the venire panel with a bias against African-Americans. The question plainly was relevant and therefore the trial court was required to pose it either verbatim or in generic form, as phrased in *Hernandez*.

*v. State*, 412 Md. 635, 645 (2010) (quoting *Dingle v. State*, 361 Md. 1, 9 (2000)). Although in Maryland, unlike in almost all the other states, *voir dire* is not for the purpose of intelligent exercise of peremptory challenges, *see Pearson*, *supra*, at 4, and for that reason almost always is conducted by the court, not by counsel, the manner in which the court conducts *voir dire* can be and often is structured to encourage honest answers to embarrassing, sensitive, or highly personal questions. On its own initiative or upon the request of counsel the trial judge can bundle those questions with routine questions, so a "yes" response by a venire member in front of the entire venire will not be revealing to the other potential jurors or anyone else present in the courtroom. Any "yes" answer will result in the juror being questioned individually at the bench.

Despite the limited nature of *voir dire* in Maryland, counsel are not mere bystanders to the *voir dire* process. They observe the venire members answering questions; may with permission pose follow-up questions; are entitled to move to strike potential jurors for cause; and of course have a right to exercise peremptory challenges. A peremptory challenge may be used by a lawyer to strike a potential juror who the lawyer does not think has given an honest answer to a question, even though the trial judge thinks otherwise. Thus, the parties' lawyers contribute substantially to the final make-up of the jury.

A mid-trial *voir dire* in which each juror would be asked Question 8 -- whether the fact that Hayes is African-American would impact his or her ability to be fair and impartial -- would not serve as an adequate substitute for the *voir dire* that should have taken place.

10

Even if the question were posed to the jurors separately, it would be obvious to all the jurors that they were being asked the same question, what each of their responses was, and whether they were having difficulty answering the question. Question 8 does not concern an objectively verifiable non-controversial topic, such as whether a juror ever lived in a particular town or ever was employed by a particular company. It is highly subjective, and, not only that, calls upon the juror to whom the question is posed to make a personal self-assessment on a topic of great sensitivity. In today's world, a truthful yes answer to that question likely would be a source of embarrassment to the person giving the answer. A *prospective juror* honestly could answer yes to that question, when the question is bundled with routine *voir dire* questions, without the answer being known to the other prospective jurors and people in the courtroom. A *seated* juror could not give the same answer without it being known to the other seated jurors and people in the courtroom. Thus, the difference in the circumstances in which the question is posed can affect a juror's willingness to answer the question honestly.

In addition, as Hayes points out, seated jurors who have heard evidence, in this case the testimony of more than half the witnesses at trial, have watched the defendant at the trial table, were chosen to be the decision-makers in the case, and have spent a day and a half as "the jury" occupy a very different relationship to the case than do prospective jurors. The prospective jurors at most have heard a short description of the case, have briefly seen the defendant, and, obviously, have not been selected to be the decision-makers in the case and

11

have not formed any bond with others in that same decision-maker role. After a day and a half of trial, seated jurors likely would have developed some ideas about the case, given that they had seen the complete testimony of several witnesses whose credibility they were supposed to be assessing. The trial experience itself may have caused the seated jurors to want to remain on the jury. This could influence their answers to Question 8, either consciously or subconsciously. With prospective jurors, *voir dire* takes place on a clean slate. With seated jurors, it would not. For all these reasons, the "cure" the prosecutor suggested for the trial court's error in failing to pose Question 8 on *voir dire* would not have been adequate, and therefore would not have been effective. It would not have placed the defendant in the same position he would have been in had the error not been committed.

As noted, the State invokes the doctrine of "invited error" in arguing waiver. The doctrine "stems from the common sense view that where a party invites the trial court to commit error, he cannot later cry foul on appeal.'" *State v. Rich*, 415 Md. 567, 575 (2010) (quoting *United States v. Brannan*, 562 F. 3d 1300, 1306 (11th Cir. 2009)). In the case at bar, the error that is at the root of this appeal was not invited by Hayes -- it was invited by the State, which objected to the trial court's giving Hayes's *voir dire* Question 8, to which he clearly was entitled under Maryland law. Only because the State invited the trial court to err, and then mid-trial realized that its objection (and the court's ruling) had been in error, did the State later ask for the court to engage in the suggested "cure" of posing Question 8 to the seated jurors after a day and a half of trial. The invited error doctrine has no relevance

to such a situation.  Moreover, for the reasons we have explained, the "cure" proposed by the State would not have been adequate or effective.

In its brief, the State does recognize the general proposition that a defendant who refuses a trial court's attempt to cure an error ordinarily does not lose his right to raise the error on appeal.  It points to *Terry v. State*, 332 Md. 329, 333-34 (1993), and *Fleming v. State*, 194 Md. App. 76, 93 (2010), for this proposition, but argues that the case before us should produce a different result.

In *Terry*, the defendant objected to the admission of evidence of a prior conviction. The court offered to admit the evidence but with a limiting instruction informing the jurors that it only was to be used by them to consider intent, knowledge, a common scheme, or a reason for not pleading guilty.[8] The defendant objected, arguing that the evidence was not admissible for any purpose and the limiting instruction merely would highlight it. As a consequence, the trial court admitted the evidence with no limitation on its use.  On appeal after conviction, the defendant challenged the admission of the prior conviction evidence. The State responded that the defendant had waived his right to challenge that evidence on appeal by not agreeing to the limiting instruction the trial court had offered to give.  The case went to the Court of Appeals, which held that there was no waiver:

> The State argues that for strategic reasons defense counsel chose to "transform
> an adverse ruling that could have been given a limited effect into a general

---

[8]In opening statement, defense counsel had told the jury that the defendant had not pleaded guilty because he had not committed the crimes (all of which were drug related).

13

defeat in the hopes of turning it to his advantage at trial or on appeal." We fail to see, however, how this decision not to accept the instruction constitutes a waiver. It was clear to defense counsel that the proposed instruction could have had the undesirable effect of highlighting the purposes suggested by the trial judge. . .

It is of course true that the defendant could have agreed to the giving of such an instruction without waiving his objection to the admissibility of the evidence. That does not mean, however, that he necessarily gave up the right to complain of an erroneous ruling by making the tactical decision that he would be harmed rather than helped by a "limiting" instruction. We agree that the evidence was inadmissible, and we hold that the instruction, if given, would not have rendered the error harmless. Under these circumstances, the defendant's decision to forego the offered instruction does not constitute a waiver of his right to later challenge the admissibility of the evidence.

332 Md. at 333-34. *See also Fleming*, 194 Md. App. at 93 (holding that "[a] defendant is not required, as a matter of law, to agree to a limiting instruction at the risk of waiving an issue for appellate review.").

The State maintains that these cases are distinguishable because in each of them the defendant had a "legitimate rationale" for opposing the limiting instruction, but here Hayes did not have a legitimate rationale for opposing the State's offered "cure" to the trial court's error under *Hernandez*. For the reasons we have just explained, Hayes in fact had a legitimate rationale for opposing the offered "cure": it would not have been adequate or effective to undo the trial court's error.

> **JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**

14