65 A.3d 741

**Brentley Glen KEGARISE**

v.

**STATE of Maryland.**

**No. 1992, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

May 2, 2013.

474

Marc A. DeSimone, Jr. (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Sarah Page Pritzlaff (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: WOODWARD, ZARNOCH and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

RAYMOND G. THIEME, JR. (Retired, Specially Assigned), J.

This case presents the question of whether the trial court erred by failing to propound defense counsel's requested voir dire question, which was to inquire whether all members of the venire panel were citizens of the United States. On September 15–16, 2011, after the trial court declined to ask this question, appellant Brentley Glen Kegarise was tried by jury and convicted of theft, firearm possession and related charges. We shall now hold, based upon *Owens v. State*, 399 Md. 388, 924 A.2d 1072 (2007), *cert. denied,* 552 U.S. 1144, 128 S.Ct. 1064, 169 L.Ed.2d 813 (2008), that the trial court abused

its discretion by failing to ask appellant's requested voir dire question. Given that United States citizenship is a statutory qualification pursuant to Md. Code Ann., Courts and Judicial Proceedings ("CJP"), § 8–103(a)(3) (2006 Supp.), appellant's question was a valid attempt to confirm that all members of the venire panel were qualified to serve as jurors.

## FACTUAL BACKGROUND

Appellant, who had been previously convicted of a felony, was indicted in the Circuit Court for Frederick County with various offenses related to the theft of a handgun. Prior to trial, each party submitted a written request to the trial court proposing several voir dire questions; appellant proposed fourteen and the State proposed nineteen. The trial court began voir dire by instructing the venire panel that he was about to ask them several questions, the purpose of which was "to assist the attorneys in impaneling a fair and impartial jury." During voir dire, the trial judge posed approximately twenty questions, as well as several follow-up questions to the various panel members who responded.

The following colloquy then took place:

THE COURT: Counsel, I think I've hit every question, or at least the essence of every question that you've each requested. However, if I've missed something or you thought of something, Ms. [Prosecutor], do you have any additional questions you'd like me to, uh, give to this, or ask this panel?

[PROSECUTOR]: No, Your Honor.

THE COURT: Mr. [Defense Counsel]?

[DEF COUNSEL]: Just one other. **Could the Court inquire [if] they're all U.S. citizens?**

[THE COURT]: I didn't see that on there.

[DEF COUNSEL]: I just thought of it. I don't know if it's included in the questionnaire, but that brings them in or not.

[THE COURT]: That is included in the questionnaire. I think what happened was that person, but I'll ask—any objection to that? I'm not—

[PROSECUTOR]: I don't know if that's permissible.

[THE COURT]: I know I can't ask your, I can't ask the defendant that question, but, which is why I have to form it.

[PROSECUTOR]: We would object for the record.

[THE COURT]: I can't ask—you know I do the voir dire, I can't ask the defendant if they're a U.S. citizen. The question has to be do you understand if you are or not, and I never inquire whether they are, but I don't, and because of the rationale on that, do you know any rationale for me to ask that question or be able to ask that question?

[DEF COUNSEL]: In other words ask were they born in the United States or nationalized in another country since being born in the United States, but I'd ask the Court to inquire.

[PROSECUTOR]: The State would object.

[THE COURT]: I'm not going to ask that.

[DEF COUNSEL]: Thank you.

(Emphasis added).

■ Both parties then participated in the final selection of the jury, after which the clerk called the roll, and a jury of seven males, five females, and one male alternate was seated.[1] In response to the court's question regarding whether there was satisfaction with the selected jury, both prosecutor and defense counsel answered in the affirmative, without any objections.[2] The jury was then sworn and seated.

---

1. The record provides no further information regarding the actual forms filled out by this venire panel. The only information available regarding the venire panel are the names of the jurors who were selected for service (Mr. Powell, Mr. Nusraty, Mr. McCutcheon, Mr. Wunderler, Ms. Lindstrom, Mr. Cao, Mr. Swett, Ms. Kitts, Mr. Patton, Ms. Ellis, Ms. Niemiec, and Ms. Linares).

2. Unqualified acceptance of jury panel does not waive "an objection to a judge refusing to ask a proposed voir dire question," *State v. String-*

**478** 

## DISCUSSION

██ Appellant argues that his convictions must be vacated based on the trial court's error in failing to propound his requested voir dire question regarding whether all potential members of the jury were citizens of the United States. Because statutory law provides that only United States citizens are qualified to serve as Maryland jurors, *see* CJP § 8–103(a)(2), and trial judges are required "to pose *voir dire* questions directed at exposing constitutional and statutory disqualifications when requested by a party," *Owens,* 399 Md. at 422, 924 A.2d 1072, appellant maintains that the court's "error demands a reversal" of his conviction.

In support of its argument that appellant is not entitled to a reversal of his convictions, the State argues that the trial court properly exercised its discretion because it was "not likely" to reveal cause for disqualification based upon citizenship. The State further contends that, had the court asked appellant's requested question, it could have "compelled an incriminating response," and, even if the court abused its discretion, appellant failed to establish any prejudice. In response, appellant maintains that a non-citizen's residency status cannot be presumed to be that of an illegal alien, and the court's error caused prejudice by forcing him to "select a jury without knowing whether the venire persons [were] qualified to serve as jurors." Appellant is correct.

██ Every criminal defendant has the constitutional right to a trial by an impartial jury pursuant to the Sixth Amendment to the United States Constitution, and Article 21 of the Maryland Declaration of Rights, which guarantees, "[t]hat in all criminal prosecutions, every man hath a right ... to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty." The Sixth Amendment of the United States Constitution similarly guarantees a

---

*fellow,* 425 Md. 461, 471, 42 A.3d 27 (2012), citing *Marquardt v. State,* 164 Md.App. 95, 142–43, 882 A.2d 900 (2005) (Party's voir dire objection preserved by letting court know what action they wanted done).

criminal defendant, *inter alia*, "the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed[.]" Voir dire is the means by which the defendant may identify and challenge unqualified jurors. *Owens*, 399 Md. at 402, 924 A.2d 1072; *Tetso v. State*, 205 Md.App. 334, 368, 45 A.3d 788 *cert. denied*, 428 Md. 545, 52 A.3d 979 (2012); *Williams v. State*, 394 Md. 98, 106, 904 A.2d 534 (2006) (The potency of the guarantee to an impartial trial relies on the promise that the fact-finder will depend solely on the evidence and argument introduced in open court); *Rosales–Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981) ("Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled.").

In Maryland, we have adopted and continue to adhere to "limited voir dire." *Dingle v. State*, 361 Md. 1, 13, 759 A.2d 819 (2000). By "limited" we mean that "the sole purpose of voir dire is to ensure a fair and impartial jury by determining the existence of cause for disqualification, and not as in many other states, to include the intelligent exercise of peremptory challenges." *Washington v. State*, 425 Md. 306, 312, 40 A.3d 1017 (2012). "Critical in ensuring that the guarantee is meaningful is the voir dire of the venire, the purpose of which is to exclude from the venire potential jurors for whom there exists cause for disqualification[.]" *Williams*, 394 Md. at 107, 904 A.2d 534.

"Undergirding the voir dire procedure and, hence, informing the trial court's exercise of discretion regarding the conduct of the voir dire, is a single, primary, and overriding principle or purpose: 'to ascertain "the existence of cause for disqualification." ' "

*Id.* (*quoting Hill v. State*, 339 Md. 275, 279, 661 A.2d 1164 (1995), in turn *quoting McGee v. State*, 219 Md. 53, 58, 146 A.2d 194 (1959)) (further citation omitted). The trial court "need not make any particular inquiry of the prospective

jurors unless that inquiry is directed toward revealing cause for disqualification." *Dingle,* 361 Md. at 13–14, 759 A.2d 819. If a party fails to challenge an unqualified juror during the process of voir dire, that challenge is considered to be waived. *Owens v. State,* 170 Md.App. 35, 73, 906 A.2d 989 (2006), *aff'd* 399 Md. 388, 924 A.2d 1072 (2007), *cert. denied,* 552 U.S. 1144, 128 S.Ct. 1064, 169 L.Ed.2d 813 (2008) (Issue waived where "appellant never asked the court to pose a single voir dire question aimed at verifying that all members of the venire panel were qualified based on the statutory criteria of citizenship.").

The Court of Appeals has identified only "two broad areas of inquiry that may reveal cause for a juror's disqualification: (1) examination to determine whether the prospective juror meets the minimum statutory qualifications for jury service, and (2) examination to discover the juror's state of mind as to the matter in hand or any collateral matter reasonably liable to have undue influence over him." *Washington,* 425 Md. at 313, 40 A.3d 1017 (citing *Davis v. State,* 333 Md. 27, 35–36, 633 A.2d 867 (1993)). Appellant's request to inquire whether all venire panel members were United States citizens concerns the first area of inquiry set forth in *Washington* because the posed question deals solely with whether all jurors satisfied the minimum statutory qualifications for service, as set forth in CJP § 8–103(a)(2). An example of the second area of inquiry can be found in *State v. Shim,* 418 Md. 37, 59, 12 A.3d 671 (2011), in which the trial court was held to have abused its discretion by refusing to ask whether any panel member had such strong feelings about criminal charges that it would be difficult to fairly and impartially weigh the facts of the case. "Maryland law has made clear that if a question is directed to a specific cause for disqualification then the question must be asked and failure to do so is an abuse of discretion." *Moore v. State,* 412 Md. 635, 654, 989 A.2d 1150 (2010) (internal quotation marks and citation omitted.)

Maryland's statutory law governing qualification criteria for jurors is set forth in CJP § 8–103, and provides as follows:

(a) *Requirements.*—Notwithstanding § 8–102 [3] of this subtitle, an individual **qualifies for jury service** for a county only if the individual:

(1) Is an adult as of the day selected as a prospective juror;

(2) **Is a citizen of the United States;**

(3) Resides in the county as of the day sworn as a juror. (Emphasis added.) This subsection was adopted by the Maryland Legislature in 2006, and contains new language substituted for former CJP § 8–207(b)(1) and (8). Prior to 2006, CJP § 8–207(b)(1) and (8) provided that "a person is qualified to serve as a juror, unless he is not constitutionally qualified to vote in the county where the court convenes," and is "under the age of eighteen." [4] In other words, for a juror to be eligible to serve, the individual had to be eligible to vote. Although the rule that a Maryland juror must be a United States citizen was not clearly expressed, it was still considered "clear … that Maryland statutes exclude aliens from jury duty." *Perkins v. Smith,* 370 F.Supp. 134, 135 (D.Md.1974), *aff'd* 426 U.S. 913, 96 S.Ct. 2616, 49 L.Ed.2d 368 (1976). The current version of the statute setting forth jury qualification criteria makes the United States citizenship requirement straight-forward, and eliminates any need for reference to rules governing criteria to be a registered voter. In addition, CJP § 8–103(b) sets forth several factors that serve to disqualify an individual from serving as a juror.[5]

---

**3.** Md. Code Ann. CJP § 8–102 provides, generally, that each adult citizen of this State has the opportunity and duty to serve for jury service, and that discrimination is barred based on "color, disability, economic status, national origin, race, religion, or sex."

**4.** Other "grounds for disqualification" to serve as a juror contained in former CJP § 8–207 are similar to those now included in CJP § 8–103(b).

**5.** This section provides that, "[n]otwithstanding subsection (a) of this section and subject to the federal Americans with Disabilities Act, an individual is not qualified for jury service if the individual:

(1) Cannot comprehend spoken English or speak English;

■ The mandatory rule that Maryland jurors be United States citizens is a statutory, not constitutional, requirement. Likewise the United States Code, but not federal Constitution, provides that jurors who serve on federal juries must be citizens of the United States. *See* 28 United States Code Ann. § 1865(b)(1) (2006, 2012 Cum. App.). In determining whether an individual is qualified to serve on the grand and petit juries of a United States District Court, the federal judge may not allow the person to serve as a juror if the individual "is not a citizen of the United States eighteen years old who has resided for a period of one year within the judicial district[.]" 28 U.S.C. § 1865(b)(1).[6]

Challenges to the requirements set forth in 28 U.S.C. § 1865 often occur through a party's argument that he or she was deprived of the right to a fair trial because the rule deprives parties of their right to be tried before a jury representing "a fair cross-section of the community." The federal law, composed of 28 U.S.C. §§ 1861–69, is known as the Jury Selection and Service Act ("JSSA"), and § 1861 provides: "It is the policy of the United States that all

---

(2) Cannot comprehend written English, read English, or write English proficiently enough to complete a juror qualification form satisfactorily;

(3) Has a disability that, as documented by a health care provider's certification, prevents the individual from providing satisfactory jury service;

(4) Has been convicted, in a federal or State court of record, of a crime punishable by imprisonment exceeding 6 months; or

(5) Has a charge pending, in a federal or State court of record, for a crime punishable by imprisonment exceeding 6 months."

(c) An individual qualifies for jury service notwithstanding a disqualifying conviction under subsection (b)(4) of this section if the individual is pardoned.

**6.** Other disqualifying factors to serve as a juror under federal law pursuant to 28 U.S.C. § 1865(b) include: (2) the inability to read, write, and understand the English language with sufficient proficiency to fill out the juror qualification form; (3) inability to speak English; (4) incapability, by reason of mental or physical infirmity, to render satisfactory service; or (5) if the person "has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored."

litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." *See, e.g., United States v. Maskeny,* 609 F.2d 183, 191 (5th Cir.1980) (Court rejected appellants' claim that jury was unfairly selected from unrepresentative cross-section of community).

In *United States v. Gordon–Nikkar,* 518 F.2d 972, 975 (5th Cir.1975), a Miami defendant argued that because her community was composed of thirty percent resident aliens, mostly of Cuban descent, the U.S. citizenship requirement for jurors was unconstitutional. The Court rejected her claim, and held that the government may "constitutionally impose citizenship as a qualification for jury service." *Id.* at 976. In reaching its conclusion, the Court relied upon the following reasoning from the three-judge opinion of Maryland's District Court in *Perkins v. Smith,* 370 F.Supp. 134 (D.Md.1974), *aff'd,* 426 U.S. 913, 96 S.Ct. 2616, 49 L.Ed.2d 368 (1976):

> In maintaining the jury system as "the very palladium of free government" the states logically can anticipate that native-born citizens would be conversant with the social and political institutions of our society, the customs of the locality, the nuances of local tradition and language. Likewise naturalized citizens, who have passed through the citizenship classes sponsored by the Immigration and Naturalization Service, have demonstrated a basic understanding of our form of government, history and traditions. There is no corresponding basis for assuming that resident aliens, who owe allegiance not to any state or to the federal government, but are subjects of a foreign power, have so assimilated our societal and political mores that an equal reliance could be placed on their performing as well as citizens the duties of jurors in our judicial system.

> The nature of the operation of juries makes it apparent that persons unfit for jury service can work a great deal of harm, through inability or malice, to efficiency and fairness. Jury deliberations are perhaps the most secret form of decision-making in the nation; the means of persuasion used

by jurors on each other are never revealed. A single juror who failed to understand the import of the evidence being presented or who lacked any concern for the fairness of the outcome could severely obstruct or distort the course of justice. A single persuasive and unprincipled juror could even direct the course of justice into channels deliberately chosen for their deleterious effect on this country. We conclude, therefore, that the state has a compelling interest in the restriction of jury service to those who will be loyal to, interested in, and familiar with, the customs of this country.

Resident aliens by definition have not yet been admitted to citizenship. Until they become citizens, they remain in most cases legally bound to the country of their origin. Nothing is to prevent their return to that country, or a move to yet a third nation. It is true that many, if not most, aliens do intend to become citizens, and that their loyalty could probably be counted upon. However, it is the process of filing for citizenship that establishes that loyalty; any attempt at prior screening would undercut the efficiency and significance of existing procedures. Therefore, although the presumption that all aliens owe no allegiance to the United States is not valid in every case, no alternative to taking citizenship for testing allegiance can be devised, so that we conclude that the classification is compelled by circumstances, and that it is justifiable.

518 F.2d. at 976–77 (quoting 370 F.Supp. at 138). *See also, Commonwealth v. Acen,* 396 Mass. 472, 482, 487 N.E.2d 189, 196 (1986) (Jury service is "too critical to the just operation of the court system" to be placed in the hands of those lacking the requisite attributes of citizenship); *State v. Garza,* 241 Neb. 934, 955, 492 N.W.2d 32 (1992) (State may properly exclude aliens from jury service); *United States v. Daly,* 573 F.Supp. 788 (N.D.Tex.1983); *United States v. Cecil,* 836 F.2d 1431 (4th Cir.1988).

Maryland law requires each county to have a written plan for jury selection and service in accordance with the requirements of State law. CJP § 8–201(a). This plan includes the

completion of a Juror Qualification Form by prospective jurors, which they must sign under penalties of perjury. CJP § 8–302(a). After providing name, address, phone numbers and age, the first question a prospective juror must answer on this standard form is whether he or she is a United States citizen. CJP § 8–302(a). After completing this form, only individuals who meet the statutory qualifications may be summonsed for potential jury service.

However, mistakes do happen, including those with respect to citizenship, as took place in *Owens, supra,* 170 Md.App. at 53, 906 A.2d 989, where shortly after the verdict was returned the parties discovered that Mr. Alade, a graduate student who served on the jury, was a citizen of Nigeria, but not the United States. Unlike appellant in the case before us, Owens "never asked the court to pose a single voir dire question aimed at verifying that all members of the venire panel were qualified based on the statutory criteria of citizenship. Consequently, Alade slipped through the jury selection process. While appellant may have assumed that the venire panel had been pre-screened based on the jury questionnaire, it is easy to anticipate that mistakes do occur, which is why a questionnaire alone is not the sole tool used to select a jury. Therefore, the use of the form does not eliminate the need to verify qualification of the venire by way of voir dire." *Id.* at 73, 906 A.2d 989.

In *Owens,* because he had a reasonable opportunity to challenge Alade's qualifications to serve as a juror during the voir dire process, but did not avail himself of the opportunity, his complaint regarding the presence of a non-citizen on the jury panel was determined to be waived. "Waiver principles apply to the failure to pose voir dire questions aimed at verifying that venire satisfies the statutory qualifications." *Id.* at 73, 906 A.2d 989. " 'Bias on the part of prospective jurors will never be presumed, and the challenging party bears the burden of presenting facts ... which would give rise to a showing of actual prejudice.' " *Id.* at 75, 906 A.2d 989 (quoting *Hunt v. State,* 345 Md. 122, 146, 691 A.2d 1255, *cert. denied,* 521 U.S. 1131, 117 S.Ct. 2536, 138 L.Ed.2d 1036 (1997)). *See*

*also, Moton v. State,* 256 Ga.App. 594, 569 S.E.2d 264 (2002) (Where defendant failed to make necessary objections during voir dire, and non-citizen served on jury, defendant's claim for a new trial was waived).

In the Court of Appeals, Owens' argument relied upon the precedent set forth in *Boyd v. State,* 341 Md. 431, 446–47, 671 A.2d 33 (1996). In that case, distinguishing voir dire questions seeking to uncover bias from questions directed to minimum statutory qualifications for jury service, the Court held that questions regarding statutory qualifications fell within the trial court's discretion. *Owens'* record revealed that he proposed no questions for the trial judge to ask of the venire panel, but Owens argued on appeal "that his request for such a *voir dire* question would have been futile" because of the Court's precedent in *Boyd,* which "leaves it to the discretion of the trial court whether actually to put the question to the venire." *Owens,* 399 Md. at 420, 924 A.2d 1072. Relevant to the case before us, the Court of Appeals in *Owens* stated the following:

> The rule in *Boyd* that *voir dire* questions concerning minimum statutory qualifications are not mandatory when sought was animated, in part, by a belief that such questions duplicate needlessly the efforts of the pre-*voir dire* screening methods which focus on statutory disqualifications. That cases such as the present one occur demonstrate a correctable weakness in this reasoning. Because the pre-*voir dire* screening methods failed to identify and excuse Alade, a non-citizen, **it is evident that *voir dire* questions regarding minimum statutory qualifications are not always "redundant and unnecessary."**[7] In fact, our cases ruminate that the pre-*voir dire* processes of screening out disqualified jurors are not fail-safe.... **We are persuaded, and so hold, that it is in the better interests of justice to**

---

7. "In fact, it is conceivable that, on the whole, more time is saved and the interests of judicial economy advanced by spending a relatively few minutes asking rote questions rather than risking the possibility of requiring a new trial by sparing those few minutes of additional *voir dire* questions." *Id.* at 422, n. 43, 924 A.2d 1072.

require trial judges to pose *voir dire* questions directed at exposing constitutional and statutory disqualifications when requested by a party. Accordingly, we overrule *Boyd* to the extent that it conflicts with this holding.

*Id.* at 422, 924 A.2d 1072 (Emphasis added).

Despite the presence of a non-citizen on the jury, it was determined by both the trial and appellate courts that Owens received a fair trial by an unbiased and impartial jury. *Id.* at 425, 924 A.2d 1072. Although the Court of Appeals concluded that the presence of a non-citizen on Owens' jury did not deprive him of a fair trial, the Court specifically noted that if Owens had sought a citizenship question, but the trial judge refused to ask it, "the propriety of the denial would have been preserved for appellate review as an abuse of discretion." *Id.* at 422, 924 A.2d 1072.

In the case before us, appellant's requested voir dire question regarding citizenship directly related to one of the statutory qualifications of the venire panel pursuant to CJP § 8–103(a). The record reveals that the trial court was about to ask this simple question, after assuring defense counsel that the question of citizenship was covered in the juror questionnaire. However, the prosecutor interjected with an objection, arguing that it would be improper for the court to pose this voir dire question, leading to distraction and the court's decision not to pose a potentially improper question.

 Based on the Court of Appeals' holdings in *Washington* and *Owens, supra,* not only was appellant's question proper, but if a defendant specifically requests a question regarding one of the jury's statutory qualifications set forth in CJP § 8–103(a), the question must be asked by the trial judge. Accordingly, we vacate the decision of the circuit court and remand for a new trial.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY VACATED AND CASE REMANDED FOR NEW TRIAL.**

**COSTS TO BE PAID BY FREDERICK COUNTY.**