**REPORTED**
IN THE COURT OF SPECIAL APPEALS
No. 959
September Term, 2014

———————————————————————

JOSHUA BENTON

v.

STATE OF MARYLAND

———————————————————————

Woodward,
Kehoe,
Arthur,


JJ.

———————————————————————

Opinion by Arthur, J.

———————————————————————

Filed:  August 31, 2015

Following a five-day jury trial in the Circuit Court for Prince George's County, Joshua Benton, appellant, was convicted of first-degree murder, conspiracy to commit first-degree murder, and use of a handgun in the commission of a felony or crime of violence. The circuit court sentenced Benton to serve two consecutive life sentences for murder and conspiracy to commit murder and a consecutive sentence of 20 years for use of a handgun. He filed a timely appeal.

## QUESTIONS PRESENTED

Benton raises three questions for our review:

1.  Did the trial court err in failing to propound Benton's requested *voir dire* question, which inquired whether any member of the venire had been charged with or convicted of a serious offense, other than a traffic offense?

2.  Did the trial court err in admitting hearsay evidence?

3.  Was the evidence insufficient to sustain Benton's convictions?

Because we agree that the trial court committed reversible error by failing to propound the requested voir dire question regarding whether the venire members had been convicted of a serious offense, and thus were statutorily disqualified to serve on the jury, we reverse Benton's convictions and remand this case for a new trial.

## FACTUAL AND PROCEDURAL HISTORY

Benton was charged with offenses arising from the death of Sharod James. The evidence presented at Benton's trial, framed in the light most favorable to the State demonstrated that around 11:50 p.m. on the night of November 16, 2012, James was shot at a gas station on Martin Luther King Jr. Highway in Prince George's County. The State

theorized that Benton and his co-defendant, Madhi Lawson, killed James because they believed that James had killed their friend, Matheno Nichols, in 2006.[1]

Two witnesses, a driver and passenger of a nearby automobile, heard the gunshots while they were stopped at a red light near the gas station. They observed two men standing over another man in a dark area of the gas station lot. Although the witnesses were too far away to see the faces of the two men they saw, they believed that the men were African-American. The witnesses were also able to describe the assailants' clothing to the police. The witnesses' description of the assailants' clothing was consistent with the clothing worn by Benton and Lawson in a surveillance video taken at the gas station on the night James was killed.[2] Telephone records indicated that, at around the time of the shooting, James received a call from a cell phone number used by Lawson.

Steven Waytes, who had been incarcerated with Benton in the Prince George's County Corrections Center while Benton was awaiting trial in 2013, testified that members of the public believed that James had killed Benton's friend, Matheno Nichols. The trial court allowed the admission of Waytes's grand jury testimony that Benton admitted that he was at the gas station on the night James was shot, but that "the State had nothing on him."

---

[1] James was charged with Nichols's murder, but was acquitted by a jury.

[2] From a still photograph made from the gas station surveillance video, Wasette Lawson, co-defendant Lawson's mother, identified Lawson and "Twin," which was a street name used by Benton, who has a twin brother. Benton and Lawson were also identified in the surveillance video by the Detective who investigated James' murder.

## DISCUSSION

### I.     Voir Dire Question

Before trial, the parties submitted written requests to the trial court, including the voir dire questions that they wanted the court to ask the potential jurors.  The State's proposed voir dire question number 7, inquired: "Have you, any members of your immediate family, or close personal friends ever been . . . arrested for, charged with, or convicted of a crime, excluding routine motor vehicle violations?"  The defense's proposed voir dire question number 26 queried: "Has any member of the jury or a close personal friend or relative been charged with or convicted of a serious offense, other than a traffic offense?"  The defense also included question 31, which asked:  "Has any member of the jury or a family member or a close personal friend, been a victim of a criminal offense?"

During voir dire, the trial court posed only eight questions to the prospective jurors and then individually questioned the jurors who had responded affirmatively to the court's questions.  At the conclusion of voir dire, the following colloquy occurred:

| | |
|---|---|
| THE COURT: | That's it for the questions I intend to pose to them on voir dire.  Any exceptions to the Court's voir dire[?] |
| [PROSECUTOR]: | The State would ask for the standard three part — charged with, convicted of, victim of a crime. |
| THE COURT: | I am not doing it.  Case law says no. |
| [PROSECUTOR]: | No? |
| [DEFENSE]: | Going to ask. |
| THE COURT: | Not doing it.  Case law says no. |

| [DEFENSE]: | Ask for the same thing in addition. Court's indulgence. |
|---|---|
| [DEFENSE][3]: | My question 23, which was — |
| THE COURT: | Which is, charged, must be guilty of something. I already asked the jurors. I was going to give them instructions that are going to be binding, and would they be able to follow the Court's instructions. They said yes. They will be instructed as to presumption of innocence. |
| [DEFENSE]: | Okay. Beyond that, the only hesitation I have is the Court saying they are not going to ask the question about whether a family member, close friend, or themselves have been a victim of a criminal offense. |
| THE COURT: | Well, you accept [*sic*] to my not asking that question? |
| [DEFENSE]: | Yes, I do. Based upon the responses we've gotten so far from some of the jurors, indicated some of them, in fact, have been victims or have had close friends or relatives who are victims that has severely affected their ability to listen to the evidence and be impartial. |
| THE COURT: | I certainly do not feel myself willing, capable to challenge the wisdom of the Court of Appeals who have spoken in this matter. |

Benton asserts that the trial court abused its discretion by refusing to question the venire members about whether any of them were currently charged with or had previously been convicted of a serious offense. The court was required to ask the requested voir dire question, Benton contends, because it was intended to "expose the

---

[3] The transcript attributes this comment to the prosecutor. Given that the State requested only 19 voir dire questions, we believe that this request was actually made by defense counsel, whose list of proposed voir dire questions numbered 38 – including Question 23, which queried: "Does any member believe that solely because a person is charged, he must be guilty of something?"

venire persons' statutory disqualifications."

Preliminarily, we must address the State's assertion that the defense failed to preserve Benton's arguments regarding the failure to ask the requested voir dire question. Based on the colloquy reproduced above, the State asserts that, although defense counsel joined in the State's request to ask the "three part – charged with, convicted of, victim of a crime" question, he subsequently limited his argument to the court's refusal to question the venire regarding whether they or a close friend or relative had been a victim of a crime and thereby waived all other grounds for his objection. The State further asserts that because defense counsel merely joined in the State's request for the three-part question, Benton made no "specific request" to propound a question that focused on any potential juror's pending charges and prior convictions. We reject the claim of non-preservation.

The manner of making objections during jury selection is governed by Md. Rule 4-323(c). *See Marquardt v. State*, 164 Md. App. 95, 142-43 (2005). This rule provides as follows:

> (c) *Objections to other rulings or orders*. For purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court. The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs. . . .

Before trial, Benton submitted a written request that the court ask potential jurors whether they had ever "been charged with or convicted of a serious offense[.]" During voir dire, defense counsel joined in the State's request for a three-part "charged with,

-5-

convicted of, victim of" question at the close of the court's voir dire, indicating that he was, "going to ask . . . for the same thing in addition" to the State's request. These efforts were sufficient to let the court know that the defense wanted the court to ask the proposed question and that the defense objected to the court's refusal to ask the question.

After the trial court summarily denied those requests, the court then denied a separate, unrelated request to ask the venire members whether they would presume that any person charged with a crime is guilty. A moment after that ruling, defense counsel then took exception to the court's refusal to ask his previously proposed question about whether potential jurors had ever been the "victim of" a crime.[4] At that point, the court explained its refusal to propound any "victim of" question.

We see no suggestion in the record that, when the defense noted an exception to the court's refusal to ask the proposed "victim of" question, defense counsel expressed any intent to withdraw the previous objection to the court's refusal to ask the three-part "charged with, convicted of, victim of a crime" question. In light of the trial court's emphatic, repeated ruling ("Not doing it. Case law says no"), any additional efforts by defense counsel to "focus the court on the 'convicted of' part of the State's question[,]" as the State suggests he was required to do, would have run a substantial risk of antagonizing the court. Defense counsel reasonably chose to drop the issue and move on, expressly stating that his subsequent requests and arguments were made "in addition" to

_____

[4] As previously stated, in the defense's written submissions, the proposed question about whether potential jurors had ever been a "victim of" a crime (question 31), was completely separate from the question of whether potential jurors had ever been "charged with or convicted" of a serious crime (question 26).

his previously-denied request for "the same" three-part "charged with, convicted of, victim of" question that the State had proposed.

The State now complains that it is an "appellate afterthought" for Benton to contend that he was attempting "to expose the venire persons' statutory disqualifications" through the parts of his three-part voir dire question that asked whether a prospective juror had been convicted of or charged with a serious offense. The State's contention has some intuitive force, as Benton certainly never mentioned statutory disqualifications as a basis for propounding the proposed question. Furthermore, if Benton had mentioned statutory disqualifications, the circuit court almost certainly would have refocused its analysis from the question concerning whether a juror had been a victim of a crime, which it correctly recognized that it need not ask (*see Pearson v. State*, 437 Md. 350, 359 (2014)), to the separate question concerning whether a juror had been convicted of or charged with a serious crime.

Nonetheless, for the purposes of appellate review, Benton was not required to explain the basis for his request. Under Md. Rule 4-323(c), it was "sufficient" for Benton simply to "make[] known to the court the action that [he] desire[d] the court to take[.]" He had no obligation to state the grounds for the objection, because the court did not direct him to do so. *See id.*

This Court's decision in *Baker v. State*, 157 Md. App. 600 (2004), confirms that Benton adequately preserved his objection to the court's failure to propound his question. In *Baker* the defendant had submitted a written list of proposed voir dire questions. *Id.* at 608. The circuit court asked defense counsel whether he wanted to be heard in support of

the submission, but counsel declined to speak. *Id.* at 609. On appeal from the court's failure to ask one of the proposed questions, the State argued that the defendant had waived his rights by failing to state the basis for his objection. Applying Rule 4-323(c), however, this Court held that the defendant preserved his objection simply by informing the court what action he wanted the court to take – *i.e.*, by asking the court to read his proposed voir dire questions. *Baker*, 157 Md. App. at 610. It made no difference that the defendant had failed to avail himself of a later opportunity to articulate the rationale for his proposed questions or the basis for objecting to the court's refusal to ask them. Under Rule 4-323(c), the defendant would have waived his rights only if he failed to state the grounds after the court had affirmatively directed him to do so.

Additionally, Benton did not waive his objection to the trial court's failure to ask the requested voir dire question by ultimately accepting the empaneled jury. *See Kegarise v. State*, 211 Md. App. 473, 477 n.2 (2013); *see also State v. Stringfellow*, 425 Md. 461, 471 (2012) (stating that "unqualified acceptance" of jury panel does not waive "an objection to a judge refusing to ask a proposed *voir dire* question"); *Marquardt*, 164 Md. App. at 142-43 (party's voir dire objection is preserved by letting the court know what action the party wanted the court to take).

In light of *Baker* and Rule 4-323(c), we have no choice but to conclude that Benton preserved his objection. Defense counsel let the trial court know, both in writing and in an oral request, that he wanted the court to ask a voir dire question that included the "charged with, convicted of, victim of" language. The trial court made a clear ruling denying that request, without directing Benton to state the grounds for his request. At no

point did defense counsel subsequently withdraw that request, or limit his request to only the "victim of" portion of the proposed voir dire question. Therefore, Benton preserved his arguments for appellate review.

We shall now consider whether the trial court abused its discretion by failing to propound a voir dire question, requested by both parties, which inquired, in pertinent part, whether any member of the venire panel was currently charged with or had previously been convicted of a serious offense, other than a traffic offense.

Maryland courts employ "'limited *voir dire*[,]'" the "sole purpose [of which] 'is to ensure a fair and impartial jury by determining the existence of [specific] cause for disqualification[.]'" *Pearson*, 437 Md. at 356 (quoting *Washington v. State*, 425 Md. 306, 312-13 (2012)) (alterations in *Pearson*). The Court of Appeals has identified "two broad areas of inquiry that may reveal cause for a juror's disqualification: (1) examination to determine whether the prospective juror meets the minimum statutory qualifications for jury service, and (2) examination to discover the juror's state of mind as to the matter in hand or any collateral matter reasonably liable to have undue influence over him." *Washington*, 425 Md. at 313 (citing *Davis v. State*, 333 Md. 27, 35-36 (1993)). "Maryland law has made clear that if a question is directed to a specific cause for disqualification then the question must be asked and failure to do so is an abuse of discretion." *Moore v. State*, 412 Md. 635, 654 (2010) (internal quotation marks and citation omitted).

More specifically, we have held that "trial judges are required 'to pose *voir dire* questions directed at exposing constitutional and statutory disqualifications when

requested by a party[.]'" *Kegarise*, 211 Md. App. at 478 (quoting *Owens v. State*, 399 Md. 388, 422 (2007)). In *Owens*, the Court of Appeals held that a criminal defendant had waived an objection based on the statutory requirement that a jury be composed entirely of citizens, because the defendant waited until after voir dire to challenge an unqualified juror. *Owens*, 399 Md. at 426. The Court commented that "[h]ad Owens sought, and the trial judge refused, a citizenship question" during voir dire, then "the propriety of the denial would have been preserved for appellate review as an abuse of discretion." *Id.* at 422. In light of that analysis, we subsequently held, in *Kegarise*, that a trial court had abused its discretion by failing to ask a defendant's requested voir dire question on whether the venire members met the minimum statutory qualification of U.S. citizenship. *See Kegarise*, 211 Md. App. at 487.

Like the voir dire question requested in *Kegarise*, Benton's proposed question was likely to have uncovered cause for automatic disqualification of potential jurors. In Maryland, "an individual is not qualified for jury service if the individual . . . [h]as been convicted, in a federal or State court of record, of a crime punishable by imprisonment exceeding 6 months and received a sentence of imprisonment for more than 6 months; or [h]as a charge pending . . . for a crime punishable by imprisonment exceeding 6 months." Md. Code (1974, 2013 Repl. Vol.), § 8-103(b)(4)-(5) of the Courts and Judicial Proceedings Article ("CJP").

The mere fact that the venire members also provided information about past convictions and pending criminal charges through a jury questionnaire did not render the proposed voir dire question unnecessary. Before their service, the jurors in this case were

required to accurately complete juror qualification forms, under penalty of perjury. The standard juror qualification form includes questions inquiring whether potential jurors have any "[c]onviction of crime punishable by imprisonment exceeding 6 months and [have] received a sentence of imprisonment for more than 6 months and not legally pardoned[,]" or have any "[p]ending charge for a crime punishable by imprisonment exceeding 6 months[.]" CJP § 8-302(a).[5]

Ideally, the staff in the jury office pre-screens all potential jurors to ensure that they are not statutorily disqualified from serving on a jury. *See Kegarise*, 211 Md. App. at 485-46 (discussing verification of citizenship). History proves, however, that "mistakes do happen[.]" *Id*. at 485. As the Court of Appeals opined in *Owens*:

> . . . [I]t is evident that *voir dire* questions regarding minimum statutory qualifications are not always "redundant and unnecessary." In fact, our cases ruminate that the pre-*voir dire* processes of screening out disqualified jurors are not fail-safe. We are persuaded, and so hold, that it is in the better interests of justice to require trial judges to pose *voir dire* questions directed at exposing constitutional and statutory disqualifications when requested by a party.

*Owens*, 399 Md. at 422 (footnote and citation omitted).

---

[5] *See* http://www.princegeorgescountymd.gov/sites/circuitcourt/JuryDuty/QA advising potential jurors:

The Juror Qualification Form asks for information to make sure that you are legally qualified to serve as a juror. You are legally required to answer these questions truthfully. Your name, age, town, marital status, highest level of education, occupation, and your spouse's occupation, will appear on the jury information sheet given to the judge and lawyers in the courtroom; all other information will only be reviewed by the Jury, Judge, Jury Commissioner, and their designees.

Accordingly, inclusion of the relevant questions on the juror disqualification form does not excuse the trial court from its obligation to ask requested questions aimed at verifying whether any potential jurors are statutorily disqualified from serving on a jury.[6]

In this case, the trial court summarily denied the parties' requests to ask a three-part "charged with, convicted of, victim of" voir dire question, stating "Not doing it. Case law says no." The trial court was only partially correct, as "a trial court need not ask during *voir dire* whether any prospective juror has ever been the victim of a crime." *Pearson*, 437 Md. at 359. Nonetheless, it is incumbent upon the trial court to rephrase an "overbroad proposed *voir dire* question [that] encompasses a mandatory *voir dire* question[.]" *Id*. at 369 n.6; *see also Bowie v. State*, 324 Md. 1, 11-12 (1991) (holding that, even though wording of defendant's proposed voir dire questions on disqualifying racial bias was arguably defective, the court erred by refusing to propound any questions "designed to elicit the essence of the information" sought by the defendant). The trial court failed to restate the mandatory portion of the voir dire question in this case.

The voir dire question requested by the parties was directed at a "specific cause for disqualification." *Moore*, 412 Md. at 654. The court would have been obligated to dismiss any member of the venire whose responses to the proposed voir dire question revealed that the individual had a disqualifying prior conviction or disqualifying pending

---

[6] It is also possible that a potential juror might answer truthfully on the jury questionnaire that the person has no disqualifying convictions or pending charges, and then thereafter be charged with a crime punishable by imprisonment exceeding six months. *E.g. Hunt v. State*, 345 Md. 122, 140-41 (1997). As a practical matter, only voir dire questions will reveal disqualifying charges or convictions that occur after the jury questionnaire is submitted and before the potential jurors are called for service.

charges. *See* CJP § 8-103(b)(4)-(5). Given that a mandatory area for voir dire inquiry is "to determine whether the prospective juror meets the minimum statutory qualifications for jury service," *Washington*, 425 Md. at 313, we conclude that the trial court's refusal to ask the potential jurors whether any of them were currently charged with or had previously been convicted of a serious offense constituted reversible error. *See Kegarise*, 211 Md. App. at 487 (holding that the trial judge committed reversible error by failing to pose requested voir dire question directed at exposing statutory disqualifications of potential jurors).

## II.    Admission of Informant's Testimony

We shall next briefly address the evidence issue raised by Benton because this issue is likely to arise again at Benton's new trial.

During the direct examination of Waytes, the jailhouse informant who testified against Benton, the prosecutor elicited testimony indicating that the "word on the street" was that the victim, James, had killed Benton's friend, Matheno Nichols, in 2006. The court allowed the informant's testimony, not for the purpose of proving that James killed Nichols, but to demonstrate what the informant, and arguably Benton, believed to be true.

Benton contends that the trial court erred by admitting evidence that James killed Nichols. He also asserts that the informant's testimony constituted both inadmissible hearsay evidence and improper lay opinion testimony. Even assuming that the admission of the informant's testimony was erroneous, we would conclude that any error was harmless beyond a reasonable doubt in the circumstances of this case.

On the third day of Benton's trial, the detective who investigated Nichols's death

testified, without objection, that James had been arrested and tried for Nichols's murder. An appellate court "will not find reversible error on appeal when objectionable testimony is admitted if the essential contents of that objectionable testimony have already been established and presented to the jury *without objection* through the prior testimony of other witnesses." *Yates v. State*, 429 Md. 112, 120 (2012) (citation omitted).  Moreover, "[o]bjections are waived if, at another point during the trial, evidence on the same point is admitted without objection." *DeLeon v. State*, 407 Md. 16, 31 (2008) (citing *Peisner v. State,* 236 Md. 137, 145-46 (1964), *cert. denied,* 379 U.S. 1001 (1965)).

Even if Benton had not waived his arguments regarding the informant's testimony, however, we would find no merit in his assertions that the evidence constituted either hearsay or lay opinion testimony.  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5-801(c).  Generally, hearsay evidence is not admissible, unless it falls within one of many exceptions.  Md. Rule 5-802; *see also Thomas v. State*, 429 Md. 85, 96 (2012) ("Generally, statements made out of court that are offered for their truth are inadmissible as hearsay, absent circumstances bringing the statements within a recognized exception to the hearsay rule") (quoting *Su v. Weaver*, 313 Md. 370, 376 (1988)).

In this case, the State did not offer the informant's testimony that the "word on the street" was that the victim had killed Benton's friend, to prove that James did, in fact, kill Nichols.  The State offered the testimony to prove that he, and others – particularly others in the Kenilworth neighborhood of Washington, D.C., where Benton and his co-

defendant lived – believed that James killed Nichols. Because the State did not offer the informant's testimony for "the truth of the matter asserted" within the meaning of Rule 5-801(c), it was not inadmissible hearsay evidence. *See, e.g.*, *Ashford v. State*, 147 Md. App. 1, 77 (2002) (reasoning that assertion was not hearsay because it was not offered to prove the truth of the matter asserted but to show effect of statement on defendant).

At trial, Benton objected to the informant's "word-on-the-street" testimony on hearsay grounds alone. Because Benton did not object to the testimony on the ground that it was a lay opinion, he did not properly preserve that contention for appellate review. *See Klauenberg v. State*, 355 Md. 528, 541 (1999) (when specific grounds for an objection are proffered, even though not requested by court, the objecting party is deemed to have waived all other grounds). Benton does not request plain error review on this ground.

But even if Benton had preserved his objection, we would not agree that the informant's testimony constituted improper lay opinion testimony in violation of Md. Rule 5-701. The prosecutor never asked the informant if he had an opinion regarding who killed Nichols. The prosecutor solicited the informant's testimony regarding what he had heard, the "word on the street," and what the informant believed to be true.

### III.    Sufficiency of the Evidence

In cases where this Court reverses a conviction, and a criminal defendant raises the sufficiency of the evidence on appeal, we must address that issue, because a retrial may not occur if the evidence was insufficient to sustain the conviction in the first place. *Ware v. State*, 360 Md. 650, 708-09, *cert. denied*, 531 U.S. 1115 (2001) (citing *Mackall*

*v. State*, 283 Md. 100, 113 (1978)).

In reviewing the sufficiency of the evidence, an appellate court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Derr v. State*, 434 Md. 88, 129 (2013); *Painter v. State*, 157 Md. App. 1, 11 (2004) ("[t]he test is 'not whether the evidence *should have or probably would have* persuaded the majority of fact finders but only whether it *possibly could have* persuaded *any* rational fact finder'") (citations omitted) (emphasis in original).

The appellate court thus must defer to the factfinder's "opportunity to assess the credibility of witnesses, weigh the evidence, and resolve conflicts in the evidence[.]" *Pinkney v. State*, 151 Md. App. 311, 329 (2003); *see also State v. Mayers*, 417 Md. 449, 466 (2010) ("[w]e defer to any possible reasonable inference the jury could have drawn from the admitted evidence and need not decide whether the jury could have drawn other inferences from the evidence, refused to draw inferences, or whether we would have drawn different inferences from the evidence") (citations omitted). Circumstantial evidence, moreover, is entirely sufficient to support a conviction, provided that the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused. *See, e.g.*, *State v. Manion*, 442 Md. 419, 431-32 (2015); *Painter*, 157 Md. App. at 11.

Benton contends that the evidence at his trial was insufficient to permit any rational trier of fact to find that he was complicit in the murder of Sharod James. Benton

asserts that there was no physical or testimonial evidence that established that he was the person who killed James. At best, Benton suggests, the evidence was sufficient only to establish his presence at the gas station on the night James was shot. We disagree.

In addition to the substantial evidence that Benton and his co-defendant were present at the gas station around the time James was killed, the State presented the testimony of two eyewitnesses who, immediately after shots were fired, saw two men standing over a body in a dark part of the gas station wearing clothing similar to that worn by Benton and his co-defendant in contemporaneous surveillance videos. The State also presented evidence indicating that Benton and his co-defendant had a motive to murder James, who they believed had killed their friend.

Under all the circumstances, we are persuaded that the evidence presented, viewed in the light most favorable to the State, could have led a rational trier of fact to reasonably conclude that Benton conspired with his co-defendant, Lawson, to murder Sharod James and that Benton and Lawson did, in fact, shoot and kill James on the night of November 16, 2012. We conclude, therefore, that the evidence was sufficient to support Benton's convictions.

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED AND CASE REMANDED FOR NEW TRIAL CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.**